IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HELEN DALE,

    *Plaintiff*,

    v.

MARYLAND DEPARTMENT OF
TRANSPORTATION, MARYLAND
TRANSIT ADMINISTRATION,

    *Defendants*.

Civil Action No. ELH-13-191

## MEMORANDUM OPINION

This case presents employment discrimination claims arising out of budget cuts implemented in 2008 by Martin O'Malley, as Governor of the State of Maryland (the "Governor"), with the approval of the Maryland Board of Public Works (the "Board").[1]  Because of a projected revenue shortfall of $432 million for fiscal year 2009 ("FY09"), the Governor and the Board approved approximately $345 million in budget reductions, which included the elimination of more than 830 State jobs.  Over sixty of those positions were at the Maryland Transit Administration ("MTA"), a statutorily created unit within the Maryland Department of Transportation ("MDOT").  The position held by plaintiff Helen L. Dale was one of the jobs that fell victim to the budget axe in October 2008.  At that time, Dale, an African-American woman, was seventy-five years old.  "Amended Complaint," ECF 31 at ¶ 4.

---

[1] The Board is composed of the Governor, the State Comptroller, and the State Treasurer. *See* Md. Const. art. XII. It bears responsibility for supervising all public works in the State of Maryland.  *See id.*

As a result of her termination, Dale filed suit against the MDOT and the MTA[2] on January 17, 2013.  *See* "Complaint," ECF 1.  Dale claimed violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq*., and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-634 ("ADEA"), alleging that defendants selected her position for elimination from the State's FY09 Budget because of her race, gender, and age.  *Id.* at 1, 2.

According to Dale, she was one among other "similarly situated African American women in job assignments deliberately calculated to expose the occupants to the jeopardy of budget cuts because of the person's race, gender, age, and disability." ECF 31 at 2.  Indeed, two other African-American women whose positions with the MTA were abolished as a result of Statewide budget cuts also filed discrimination claims with this Court. *See McCray v. Md. Dep't of Transp.*, ELH-11-03732, 2013 WL 210186, at *1 (D. Md. Jan 16, 2013) ("*McCray I*"), *aff'd in part*, *vacated in part*, 741 F.3d 480 (4th Cir. 2014); *McCray v. Md. Dep't of Transp.*, ELH-11-03732, 2014 WL 4660793 (D. Md. Sept. 16, 2014) ("*McCray II*"); *McCleary-Evans v. Md. Transp. Auth.*, ELH-12-01550 (D. Md. May 23, 2012) (ECF 1).  The *McCray* case was reviewed once by the Fourth Circuit, as shown above, and another appeal is pending.[3]

---

[2] In her Amended Complaint, plaintiff names both the Maryland Department of Transportation and the Maryland Transit Administration.  ECF 31.  But, plaintiff consistently refers to both entities as if they were one.  She states, for example:  "Plaintiff, Helen Dale . . . hereby sues *the governmental Defendant* Maryland Department of Transportation, Maryland Transit Administration … ."  ECF 31 at 1 (emphasis added).  Nonetheless, because the MDOT and the MTA refer to themselves in plural form in filings, *see*, *e.g.*, ECF 34, I will also refer to the MDOT and the MTA as "defendants."

[3] This Court initially dismissed McCray's discrimination claims, as well as claims under the ADEA and the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101-12113.  *See McCray I*, 2013 WL 210186, at *9-17 (holding legislative immunity barred plaintiff's claims).  On appeal, the Fourth Circuit held that McCray's ADEA and ADA claims

In this case, defendants previously filed a "Motion to Dismiss or in the Alternative, Motion for Summary Judgment." ("SJ Motion," ECF 10). In support of the SJ Motion, defendants submitted a memorandum of law and exhibits, including affidavits, business records, and documents from Dale's proceedings before the Equal Employment Opportunity Commission ("EEOC"). *See* ECF 10-1 through ECF 10-14. Plaintiff opposed the motion ("SJ Opposition"), and submitted numerous exhibits, including affidavits, documents from Dale's EEOC proceedings, and documents obtained from defendants under the Maryland Public Information Act. ECF 19, ECF 19-1 through ECF 19-26.

In March 2014, following the decision from the Fourth Circuit in *McCray v. Md. Dep't of Transp.*, 741 F.3d 480 (4th Cir. 2014), Dale amended her Complaint to emphasize actions taken by defendants before the start of the budgetary decision-making process. ECF 31. In particular, she alleged that defendants placed her in a job assignment "deliberately calculated" to expose her "to the jeopardy of the budget cuts." *Id*. at 2. She also added a claim under the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2009), § 20-606(a)(1)(i) of the State Government Article ("S.G."). *Id.* at 1-2.

were barred by sovereign immunity. *McCray*, 741 F.3d at 483. And, the Court affirmed the conclusion that legislative immunity "shields the MTA and MDOT from lawsuit based on the counsel they gave executive officials in Maryland who carried out the budget cuts" from liability under Title VII. *McCray*, 741 F.3d at 485. But, the Court remanded for consideration of Title VII claims arising from acts that occurred before legislative activity applied. *Id.* In *McCray II*, 2014 WL 4660793, at *8-13, I dismissed the remaining Title VII claims for failure to exhaust administrative remedies. I also dismissed McCray's ADEA claim as barred by sovereign immunity, *id*. at *8, and dismissed, as time-barred, State claims, modified ADA claims, and a claim under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791-794, all of which McCray alleged for the first time in an amended complaint submitted after her appeal. *Id*. at *14-16. McCray has noted another appeal to the Fourth Circuit, ECF 52, which is pending.

*McCleary-Evans* is still pending in this Court. Her claims relate to Fiscal Year 2010 budget cuts, rather than FY09 budget cuts. *See, e.g.*, ELH-12-01550, ECF 1, ¶ 32.

Because plaintiff amended her complaint, ECF 31, the SJ Motion was denied as moot. *See* ECF 32 (Order).  Thereafter, as to the Amended Complaint, defendants filed a Motion to Dismiss (ECF 34), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), along with a supporting memorandum ("Memo," ECF 34-1) and exhibits drawn from Dale's EEOC proceedings. (Collectively, ECF 34 and 34-1 shall be referred to as the "Motion").  Defendants did not title their Motion as one "in the alternative, summary judgment," as they had done earlier, nor did they resubmit exhibits that they previously filed.

Defendants argue that this Court lacks subject matter jurisdiction to decide Dale's Title VII claims because she failed to timely file her lawsuit, as required by 42 U.S.C. § 2000e-5(f)(1). ECF 34-1, Memo at 2.  In the alternative, they argue that Dale's Title VII claims must be dismissed because "all claims arising from the fiscal year 2009 budget cuts … are barred by legislative immunity," and plaintiff "failed to exhaust her administrative remedies for any Title VII claims based on alleged acts that occurred before any legislative activity began."  *Id.* Additionally, defendants urge the Court to dismiss Dale's ADEA claims as barred by sovereign immunity, and to dismiss her State claim as time-barred.  *Id.*  Plaintiff filed an opposition, in which she referred to previously filed exhibits.  ("Opposition," ECF 45).  Defendants have replied.  ("Reply," ECF 46).

In light of the substantial briefing with regard to defendants' earlier SJ Motion, which included duplication of arguments advanced in connection with the pending Motion and submission by the parties of many exhibits, and in light of plaintiff's references in her Opposition to prior-filed exhibits, I notified the parties on November 12, 2014, of my intent to convert the Motion to a motion for summary judgment, pursuant to Fed. R. Civ. P. 12(d).

("Notice," ECF 47).   In the Notice, I invited the parties to oppose the Court's "proposed conversion" and/or to submit additional evidence.   In early December, plaintiff submitted three additional declarations, including one from plaintiff's attorney, John Morris, Jr., attesting to plaintiff's need for "further factual exploration in discovery."   ECF 50-2 at 7 ("Morris Decl. Supp."); *see also* ECF 50-1 ("Dale Decl. Supp."); ECF 55-1 ("Brown Decl.").   Defendants filed a response to plaintiff's submissions on December 19, 2014.   ECF 58.

The Motion has been fully briefed and, as discussed, *infra*, no further discovery is warranted.   Nor is a hearing necessary to resolve the Motion.   *See* Local Rule 105.6.   For the reasons that follow, I will construe the ADEA and MFEPA claims under standards applicable to a motion to dismiss, and grant the Motion.   With respect to the Title VII claims, I will construe the Motion as one for summary judgment and will award summary judgment to defendants.

**Factual Background**

The MDOT is a "principal department" of the Maryland State government.   Md. Code (2008 Repl. Vol, 2012 Supp.), § 2-101 of the Transportation Article ("Transp.").   The MTA is one of nine statutorily created units, or "modal administrations," within the MDOT, *see* Transp. § 2-107(a)(3), and is responsible for administering the mass transit system within Maryland.   The Secretary of the MDOT, who is appointed by the Governor with the advice and consent of the State Senate, Transp. § 2-102(a), bears statutory responsibility for the budgets of the MDOT and each of its modal administrations.   *See* Transp. § 2-103(a).

Dale was first hired by the MTA in 1990, to serve as Manager of the MTA's Office of Public Relations and Publications.   Decl. of Helen L. Dale ¶ 2 ("Dale Decl."), ECF 19-1 (Ex. 1 to SJ Opposition).   In 1994, the Secretary of the MDOT removed plaintiff from that position.   *Id.* ¶

4. Dale challenged her removal as an act of unlawful discrimination. *Id*. Her discrimination claim "resulted in litigation," which was resolved in a "non-admission" settlement that included Dale's reinstatement with the MDOT to "a higher position" at the MDOT's Office of Community Affairs. *Id*. In 2003, the Office of Community Affairs was eliminated, and Dale "was placed in a position created for [her] as Coordinator of Employee Wellness within [the] Maryland Motor Vehicle Administration … ." *Id*. ¶ 10. In 2006, Dale "worked out … a new position within the MTA as Director of System-wide Transit Equity … ." *Id*. ¶ 11.

"Sometime in 2007," plaintiff was notified that she "would be fired from [her] position at the MTA, that position was to be abolished, and, pending separation, [she] was placed in a non-functioning office." *Id*. ¶ 12. Dale "remained in this questionable status for several months until early 2008," when plaintiff's "political friends intervened" to have her "placed in a new position as coordinator of a senior initiatives program." *Id*. Dale "held this position," as coordinator of a senior initiatives program, "for not much more than six months when, on or about October 15, 2008," she "was notified that the same budgetary crisis that had existed the prior year when the MTA had created [her] position now necessitated its abolition." *Id*. ¶ 14.

Under Maryland Law, the General Assembly's appropriation for a job position with the State may be abolished in one of three ways: (1) the Governor may omit the position from the annual budget bill presented to the State legislature; (2) the General Assembly may strike an appropriation included in the budget bill presented by the Governor; or (3) the Governor, with approval of the Board, may reduce an appropriation previously included in the budget bill, as enacted. *See* 76 Md. Op. Atty. Gen. 330, 1991 WL 626528, at *1 (Sept. 5, 1991); *Judy v.*

*Schaefer*, 331 Md. 239, 258-61, 627 A.2d 1039, 1049-50 (1993) (discussing Governor's authority to strike budget appropriations).

The third method identified above derives from Section 7-213(a) of the State Finance and Procurement Article ("SFP") of the Maryland Code (2009 Repl. Vol.).  Under that section, the Governor may, "with the approval of the Board of Public Works, . . . reduce, by not more than 25%, any appropriation: (1) that the Governor considers unnecessary; or (2) that is subject to budgetary reductions required under the budget bill as approved by the General Assembly."  *Id*. The position is then lost by operation of law, just as it would be if the action had been taken in the budget bill by the Governor and the General Assembly.  76 Md. Op. Atty. Gen. 330, 1991 WL 626528 at *5.

On October 15, 2008, cuts to the FY09 Budget were imposed by the Governor and the Board using this third method.  *See* Aff. of Judith Slater, Director of Human Resources for MDOT (June 26, 2013), ¶ 7 ("Slater Aff."), ECF 10-4 (Ex. 2 to SJ Motion).  Those cuts were instituted by the Governor and the Board pursuant to SFP § 7-213(a).  *See* Press Release, "Governor O'Malley, Board of Public Works Cut Over $345 Million From FY09 Budget" (Oct. 15, 2008), ECF 10-3 (Ex. 1 to SJ Motion), *available at* http://www.governor.maryland.gov/ pressreleases/081015.asp.  As a result, on October 15, 2008, Dale's position was abolished by operation of law.  *See* Slater Aff. ¶¶ 6-8.

Dale received a written notice of the elimination of her position from MDOT Secretary John Porcari.  ECF 10-6 (Attach. 2 to Ex. 2 to SJ Motion).  It stated, in relevant part:

<u>Memorandum</u>

TO:            Helen L. Dale

Maryland Transit Administration

FROM:       John D. Porcari, Secretary
            Maryland Department of Transportation

DATE:       October 15, 2008

RE:         Position Abolition

At its meeting earlier today, the Board of Public Works approved the elimination
of the appropriation for your position.  As a result, your position will be abolished
on October 30, 2008.  Under paragraph 2.3 of the Transportation Service Human
Resources System ("TSHRS") Policy 7-H layoff, this action is not considered a
layoff.
. . . .

Dale avers that her name was added to the "hit" list of employees whose positions were

to be abolished following a meeting between Slater and "Deputy Secretary Swaim-Staley."  ECF

19-1, Dale Decl. ¶¶ 17, 18.  Dale adds that she had "a long and negative history of interaction

with Mr. Swaim-Staley, relating to both [Dale's] race and prior protected activity under the civil

rights laws in addition to [an] incident involving [Swaim-Staley's] African American

administrative assistant."  *Id.* ¶ 18.

As indicated, Dale's position was one of about 830 State jobs abolished by budget cuts in

October 2008.  Of the 830 State jobs that were abolished due to the FY09 Budget cuts, sixty-

three positions were eliminated at the MTA.  *See* ECF 10-4, Slater Aff. ¶ 7; *see also* Transp. § 4-

203 ("The [MTA] is entitled to the staff provided in the State budget.").  However, of these

positions, twenty were actually held by employees on October 15, 2008; the remaining forty-

three positions were vacant.  ECF 10-4, Slater Aff. ¶¶ 6, 7.  A list of "Proposed Position

Eliminations," dated October 8, 2008, submitted by plaintiff (ECF 19-23) and defendants (ECF

10-5), shows basic demographic information for twenty-three persons whose positions were

proposed for elimination.  The data reflects that twelve of these employees were classified as white, eight as African-American, two as multi-racial, and one did not report a racial classification.  ECF 19-23.  Fourteen were male and nine were female.  *Id*.

After Dale was "notified that her position was to be abolished for alleged budgetary reasons as of October 28, 2008, on or about the prior day, October 27, 2008," she retired.  Dale Decl. ¶ 16.  She claims that she "had no intention [of] taking retirement" prior to that day, "but for the decision of [defendants] to abolish [her] position."  *Id*.  Dale later "rescinded" her retirement, *id*., and took a "lower paying position in about 2010 through the direct intervention of Ron Freeland, Executive Secretary for the Maryland Transportation Authority, an African American man … ."  *Id*. ¶ 19.

In her Amended Complaint, Dale alleges that she filed a charge of discrimination with the Maryland Commission on Human Relations "[s]ometime after October 27, 2008."  ECF 31 ¶ 14.   In support of the Motion, defendants have submitted a copy of Dale's EEOC questionnaire, *see* ECF 34-3, and a "Charge of Discrimination," which was signed by Dale and submitted to the EEOC on August 14, 2009.  "EEOC Charge," ECF 34-4 at 1.  Plaintiff does not dispute the authenticity of the EEOC Charge.  *See generally* Opposition, ECF 45.

Dale alleges that she received notification of her right to sue "on or about October 19, 2012, or shortly thereafter."  ECF 31 ¶ 14.  Defendants challenge Dale's alleged date of notification of her right to sue.  ECF 34-1 at 5.  They have submitted a copy of a letter addressed to Dale from the U.S. Department of Justice, informing her of her right to sue under Title VII, dated October 12, 2012.  ("Right to Sue Letter," ECF 34-5).

Dale does not dispute that her Right to Sue Letter is dated October 12, 2012. *See* Opposition. Indeed, in response to defendants' SJ Motion, Dale's attorney submitted a Declaration acknowledging that the "notice of right to sue in this case" is dated October 12, 2012. *See* Decl. of John H. Morris, Jr. ¶¶ 3, 5 ("Morris Decl."), ECF 19-4. However, in that Declaration, Morris also said: "Based upon my independent recollections, as have been informed by [cellular phone] billing records identified as Attachment 2, I did not receive the cover letter from DOJ and the Notice of Right to Sue issued to Plaintiff, care of me, *see* Exhibits 8 and 9 to Defendant's [SJ] Motion, until Friday, October 19, 2012." *Id.* ¶ 8. Morris explained that he specifically recalled telephoning plaintiff's husband immediately after receiving the Right to Sue Letter, *id.* ¶ 6, addressed to Dale in care of Morris, *id.* ¶ 3, and that a review of his phone records after October 12, 2014, shows that Morris first called plaintiff's husband on October 19, 2012. *Id.* ¶ 7. Accordingly, Dale's attorney concludes that he received the right to sue letter on October 19, 2014.

As noted, Dale filed her original Complaint on January 17, 2013. *See* ECF 1. That filing was exactly ninety days after October 19, 2012.

As indicated, the Motion is filed "[p]ursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." ECF 34 at 1. In their Motion, defendants suggest, but do not specify, which of their arguments pertain to the two subsections of Rule 12. As discussed below, I will construe defendants' motion to dismiss the ADEA claim under Rule 12(b)(1). Contrary to defendants' assertion, Dale's Title VII claims cannot be reached under Rule 12(b)(1), because the ninety day filing requirement in 42 U.S.C. § 2000e-5(f)(1) is not jurisdictional. And, Dale's Title VII claims cannot be reached under Rule 12(b)(6), unless defendants' Motion, styled as a "Motion to

Dismiss," is converted to one for summary judgment, pursuant to Rule 12(d).   As discussed below, with regard to Dale's Title VII claims, I will convert defendants' Motion to one for summary judgment, and consider the Title VII claims pursuant to Fed. R. Civ. P. 56.   As a matter of law, Dale's Title VII claims are barred, in part, by legislative immunity, and barred, in part, by failure to timely file claims with the EEOC.   Finally, as to the State discrimination claims, I will construe the Motion as one to dismiss, filed under Rule 12(b)(6).   Those claims must be dismissed, as it is appears on the face of the Amended Complaint that Dale failed to file them within the State statute of limitations.

Additional facts are included in the Discussion.

## I. Standards of Review

### A.

Defendants' Motion is premised in part on Fed. R. Civ. P. 12(b)(1).   "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).   "[J]urisdiction goes to the very power of the Court to act." *Ellenbury v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008).   Moreover, "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).   Pursuant to Fed. R. Civ. P. 12(h)(3), "the court must dismiss the action" if "at any time" it determines that it lacks subject matter jurisdiction. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are

insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts, outside the four corners of the complaint, preclude the exercise of subject matter jurisdiction.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

Under Rule 12(b)(1), defendants bring a facial challenge to Dale's ADEA claims.  They argue, in effect, that this Court lacks subject matter jurisdiction because, on the face of the Amended Complaint, defendants are entitled to sovereign immunity.  ECF 34-1, Memo at 7-8. In a facial challenge, such as this, "the facts alleged in the complaint are taken as true" and, "if the complaint alleges sufficient facts to invoke subject matter jurisdiction," then the motion must be denied.  *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

## B.

Defendants' Motion is also premised in part on Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and quotations omitted); *see also, e.g., Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011) (stating that courts must construe the facts "in the light most favorable to the nonmoving party"), *cert. denied*, — U.S. —, 132 S. Ct. 402 (2011).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.  *See, e.g., Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see also United Black Firefighters v. Hirst*, 604

F.2d 844, 847 (4th Cir. 1979).   Nor must it accept legal conclusions couched as factual

allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or "legal conclusions drawn from the

facts." *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009) (quoting *Jordan*

*v. Alt. Research Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)), *cert. denied*, — U.S. —, 130 S. Ct.

1740 (2010).

Generally, in regard to a Rule 12(b)(6) motion, a court "may not consider any documents

that are outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of*

*Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).   But, a court may properly consider

documents "attached or incorporated into the complaint," as well as documents attached to the

defendant's motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt*

*Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Anand v. Ocwen Loan Servicing,*

*LLC*, —F.3d —, 2014 WL 2535405, at *2 (4th Cir. June 6, 2014); *E.I. du Pont de Nemours &*

*Co.*, 637 F.3d at 448.  To be "integral," a document must be one "that by its 'very existence, *and*

*not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay*

*Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation

omitted) (emphasis in original); *see also New Beckley Mining Corp. v. UMWA*, 18 F.3d 1161,

1164 (4th Cir. 1994) (holding district court did not err in relying on document that plaintiff

referred to in its complaint to justify cause of action).

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant

through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the

affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th

Cir. 2007) (en banc).  Courts generally do not "resolve contests surrounding the facts, the merits

of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   The Rule exists primarily to ensure that defendants are "given adequate notice of the nature of a claim" made against them.  *Francis*, 588 F.3d at 193; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 555 n.3 (2007).  However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman*, 494 F.3d at 464; *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies … if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman*, 494 F.3d at 464 (quoting *Richmond*, 4 F.3d at 250) (emphasis added in *Goodman*).

In addition, in connection with a Rule 12(b)(6) motion, a court may take judicial notice of certain public filings.  In *Phillips*, 532 F.3d at 180, the Fourth Circuit said: "In reviewing a Rule 12(b) (6) dismissal, we may properly take judicial notice of matters of public record."  Similarly, in *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989), the Court said: "[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" (Citations omitted).  *See also Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir.), *cert. denied,* ― U.S. ―, 132 S. Ct. 115 (2011); *Drubetskoy v. Wells Fargo Bank, N.A.*, 2013 WL 6839508, at *2 (D. Md. Dec. 20, 2013) (taking judicial notice of plea agreement evidencing the plaintiff's

criminal conviction, because it "is a matter of public record, as it was filed in open court"); Fed. R. Evid. 201(b)(2).

As noted, in construing a Rule 12(b)(6) motion, ordinarily a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss" under Rule 12(b)(6).  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  But, under Rule 12(d), a district court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion [to one for summary judgment], or to reject it or simply not consider it."  5C Wright & Miller, FED. PRAC. & PRO. § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion, however, "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149.  With regard to Dale's Title VII claims, it is appropriate to convert the Motion to one for summary judgment.

In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.  If the court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  But, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  "[T]he term 'reasonable opportunity' requires that all parties be given 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter

affidavits or pursue reasonable discovery.'" *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)).[4]

As I observed, prior to the filing of the Amended Complaint, defendants had filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," SJ Motion (ECF 10), along with nine exhibits. *See* ECF 10-3 to 10-14. In conjunction with the SJ Opposition, plaintiff submitted twenty-six exhibits. *See* ECF 19-1 to 19-26. But, Dale also filed a Declaration under Rule 56(d), *see* ECF 19-1, claiming, *inter alia*, that summary judgment was not appropriate because she needed further discovery.

Defendants' arguments in both the instant Motion and the SJ Motion are largely the same. In both motions, defendants argue: 1) that Dale's Title VII claims should be dismissed because she failed to file suit within ninety days of receiving her right to sue letter, *see* ECF 10-2 at 7-8, ECF 34-1 at 6-7; and 2) that her claims arising from actions taken in connection with the FY09 Budget cuts are barred by legislative immunity. *See* ECF 10-2 at 9-13, ECF 34-1 at 8-10. In light of allegations added in the Amended Complaint, following the Fourth Circuit's decision in *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 485 (4th Cir. 2014), defendants added a third defense with respect to Dale's Title VII claims. They argue that Dale's claims arising from "allegations of discrimination that occurred before her position was eliminated" must be dismissed because Dale did not timely file them with the EEOC. ECF 34-1 at 10-13.

---

[4] When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998); *see Gay*, 761 F.2d at 177 ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment.").

Given the posture of the case, on November 12, 2014, I notified the parties of my intent to convert the pending Motion to one for summary judgment.  ECF 47.  I gave the parties the opportunity to contest the proposed conversion, and afforded them a "reasonable opportunity to present all the material that is pertinent to the motion," by inviting them to "submit any additional evidence they believe the Court should consider in ruling on the Motion."  *Id*. at 2.  As discussed, plaintiff and defendants submitted additional materials (declarations and a memorandum, respectively).  *See* ECF 50-1, 50-2, 55-1 (declarations submitted by plaintiff); ECF 58 (defendants' response).  Plaintiff also reasserted her claim that additional discovery is needed.  *See*, *e.g.*, ECF 50-1 ¶ 1.

Of import here with respect to my decision to convert the Motion to one for summary judgment with respect to Title VII, I note that, in her Opposition to the Motion, Dale relied on declarations she submitted in support of her earlier opposition to defendants' SJ Motion.  ECF 45 at 1.  Her Opposition was, of course, filed prior to the Notice (ECF 47) of my intent to convert to summary judgment.  In her Opposition, Dale said: "Plaintiff urges the denial of [defendants'] motion for the following reasons, supported by the previously filed Declarations of Grady Dale, Jr. and the Declaration of John H. Morris, Jr., submitted in connection with her opposition to the prior motion to dismiss or, in the alternative for summary judgment filed by the Defendants[.]"  Those declarations related to the question of whether Dale filed suit within ninety days of receiving her right to sue letter.  Thus, plaintiff sought to incorporate by reference some of her previous submissions.

Moreover, for reasons discussed, *infra*, I am amply satisfied that no further discovery is warranted.

Therefore, under Rule 12(d), with regard to Dale's Title VII claims, I will convert defendants' Motion to one for summary judgment, and resolve it pursuant to Fed. R. Civ. P. 56.

## C.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). As the Fourth Circuit recently observed, Fed. R. Civ. P. 56 "is a mechanism to obviate trial … ." *Boyer-Liberto v. Fontainbleau Corp.*, 752 F.3d 350, 355 (2014), *rehearing en banc granted* (July 1, 2014).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts' showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322–24. The "judge's function" in reviewing a

motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

In resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Moreover, the court may not make credibility determinations on summary judgment. *Black v. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

Generally, in the face of conflicting evidence, such as affidavits, summary judgment is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See, e.g., Boone v. Stallings*, — F. App'x. —, No. 14-6521 (4th Cir. Sept. 11, 2014) (per curiam). However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248. On the other hand, a court must award summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

## II. Discussion

### A.  The ADEA Claim

Defendants contend that sovereign immunity bars Dale's ADEA claims.  ECF 34-1, Memo at 7-8.  Notably, plaintiff does not address this contention in her Opposition to the Motion.  *See generally* ECF 45.  Moreover, in her earlier opposition to defendants' SJ Motion, plaintiff implicitly agreed with defendants' contention.  She stated:  "Plaintiff's research has not disclosed a basis for overturning the authority upon which the Defendant[s] here rel[y]. … Accordingly, … Plaintiff will seek in response to Defendant[s'] motion leave to amend the age discrimination claim to ground the same circumstances alleged herein under the State statute." ECF 19 at 15.

Sovereign immunity is jurisdictional.  *See*, *e.g.*, *McCray*, 741 F.3d at 483.  Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens."  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  "This protection extends to state agencies."  *McCray*, 741 F.3d at 483.  "Therefore, absent abrogation of sovereign immunity or consent from Maryland," Dale "cannot seek injunctive or monetary relief from the MDOT or MTA."  *Id.* (citing *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001)).

"Sovereign immunity has not been abrogated for ADEA claims … ."  *McCray*, 741 F.3d at 483 (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000));.  Therefore, "absent waiver of sovereign immunity" by defendants, *McCray*, 741 F.3d at 483, which has not occurred, Dale's ADEA claims must be dismissed.  Accordingly, I will dismiss Dale's ADEA claims, pursuant to Fed. R. Civ. P. 12(b)(1), because this Court lacks subject matter jurisdiction to consider them.

### B.  Title VII Claims

Plaintiff alleges race and gender discrimination, in violation of Title VII.   ECF 31.

Defendants advance alternative arguments to support dismissal of Dale's Title VII claims.  They

argue that this Court lacks jurisdiction to hear Dale's Title VII claims because Dale did not file

her lawsuit within ninety days after receiving her Right to Sue Letter.   ECF 34-1 at 6-7; *see also*

ECF 10-2 at 7-8.   Alternatively, they argue that a) all claims arising from acts connected to the

FY09 Budget cuts are barred by legislative immunity, ECF 34-1 at 8-10; *see also* ECF 10-2 at 9-

13; and b) Dale failed to timely file with the EEOC any *other* claims, *i.e.*, claims arising from

acts that occurred prior to the legislative activity at issue here.  ECF 34-1 at 10-13.

Plaintiff argues, under Fed. R. Civ. P. 56(d), that she should be afforded additional

discovery before the Court reaches the merits of her Title VII claims.  Morris Decl. Supp. ¶ 14

(ECF 50-2).   I will address defendants' jurisdictional argument, then plaintiff's discovery

argument, and then defendants' alternative arguments.

### 1.

Defendants contend that this Court lacks subject matter jurisdiction to hear Dale's Title

VII claims because she failed to file suit within ninety days of receiving her Right to Sue Letter,

as required by 42 U.S.C. § 2000e-5(f)(1).   ECF 34-1 at 6.   They rely on two cases for the

proposition that this is a jurisdictional question:  *Staton v. Newport News Cablevision*, 769 F.2d

200 (4th Cir. 1985) (per curiam), and *McCleary-Evans v. Md. Department of the Environment*,

JKB-12-2928, 2013 WL 1890734 (D. Md. May 3, 2013).

Defendants' authorities appear to support the contention that Title VII's ninety-day filing requirement is jurisdictional.  In its entirety, the per curiam opinion in *Staton* states, 769 F.2d at 200:

> Harold Staton appeals the dismissal of his race and sex discrimination suit filed against Newport News Cablevision, Inc. for lack of jurisdiction. The district court dismissed Staton's action because it was not timely filed within ninety days as required by 42 U.S.C. § 2000e-5(f)(1). While Staton had been issued a right to sue letter on July 25, 1984, he did not file suit in district court until November 13, 1984, one hundred and eleven days later. Although Staton contends that he submitted his complaint on November 1, 1984 and that an administrative error caused the untimely filing, we find no evidence in the record to substantiate his contention. Staton admits that he received the right to sue letter on or about August 1, 1984 and the complaint was filed November 13, 1984. We, therefore, affirm the dismissal of Staton's action for failure to timely file his complaint which defeats the jurisdiction of the district court.
>
> Accordingly, because the dispositive issues recently have been decided authoritatively, we dispense with oral argument and affirm the judgment of the district court.
>
> AFFIRMED.

Similarly, in *McCleary-Evans v. Md. Department of the Environment*, the district court cited *Staton* and held that it lacked jurisdiction to hear plaintiff's discrimination claims because she failed to file suit within ninety days, as required by 42 U.S.C. § 2000e-5(f)(1).  2013 WL 1890734 at *1.  However, because *McCleary-Evans* is a district court case, it is not binding on this Court.  And, Fourth Circuit cases decided after *Staton* seem to have abrogated *Staton*.

Since *Staton*, the Fourth Circuit has repeatedly applied an equitable tolling analysis to the ninety-day filing requirement set out in 42 U.S.C. § 2000e-5(f)(1).  In *Harvey v. City of New Bern Police Department*, 813 F.2d 652, 653 (4th Cir. 1987), decided two years after *Staton*, the court was asked "whether the ninety day statutory period for filing an action" under § 2000e-5(f)(1) "commenced when the claimant's wife took delivery of the notice of the right to sue."

The district court had granted the defendant's motion for summary judgment because it could not find any "equitable grounds which would require tolling the filing period." *Id*. The Fourth Circuit affirmed, but said that in "a case such as the one at bar, district courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period." *Id*. at 654. Similarly, in *Watts-Means v. Prince George's Family Crisis Center*, 7 F.3d 40, 42 (4th Cir. 1993), the Court was again presented with a question about when the ninety-day period under 42 U.S.C. § 2000e-5(f)(1) was triggered. After finding that the plaintiff had not filed within ninety days, as required, the Court applied an equitable tolling analysis. *Id*. (citing *Harvey*).

Although neither *Harvey* nor *Watts-Means* discussed *Staton*, or expressly held that 42 U.S.C. § 2000e-5(f)(1) is not jurisdictional, it is well established that jurisdictional provisions are not subject to equitable tolling. *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) ("If equitable tolling applies, … the time limits are not jurisdictional, but are rather in the nature of a statute-of-limitations defense."); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) ("Because the 180–day period is akin to a statute of limitations, rather than a jurisdictional prerequisite to filing suit, a plaintiff can obtain relief from it under the doctrines of equitable tolling and equitable estoppel."); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 140 (2008) (Stevens, J., dissenting) ("Statutes of limitations generally fall into two broad categories: affirmative defenses that can be waived and so-called 'jurisdictional' statutes

that are not subject to waiver or equitable tolling."). A court lacking subject matter jurisdiction cannot apply an equitable remedy to cure the jurisdictional defect.

Accordingly, the Fourth Circuit's holdings in *Harvey* and *Watts-Means* reflect that the Court abrogated its decision in *Staton*. This inference is supported by numerous decisions in the District of Maryland and from other district courts in this Circuit. *See, e.g., Pierre-Antoine v. Orkin Extermination Co., Inc.*, PJM-12-2710, 2013 WL 1736664, at *2 (D. Md. Apr. 19, 2013) (holding the "ninety-day period is not jurisdictional" and citing *Zipes*, 455 U.S. at 398); *Terrell v. Injured Workers Insur. Fund*, RDB-11-330, 2012 WL 3144484, at *3 (D. Md. July 31, 2012) (same); *Rawlings v. City of Baltimore*, BEL-10-2077, 2011 WL 1375603, at *2-3 (D. Md. Apr. 12, 2011) (applying equitable tolling analysis to ninety-day filing requirement under 42 U.S.C. § 2000e-5(f)(1)); *Pennington v. Gen. Dynamics Armament & Technical Products, Inc.*, 12-cv-00063, 2013 WL 3356119, at *2 (W.D. Va. July 3, 2013) (same); *Davis v. Navy Fed. Credit Union*, 11-cv-01282 (JCC/TCB), 2012 WL 73233, at *3 n.6 (E.D. Va. Jan.10, 2012) (noting, in considering ninety-day requirement, that the "timeliness of Davis' claims … is not jurisdictional and is properly considered under Rule 12(b)(6)"); *Hughey v. Greenville Health System University Medical*, 6:07-00297-HFF-BHH, 2009 WL 2170650, at *3-5 (D.S.C. July 20, 2009) (adopting report and recommendation of magistrate) (applying equitable tolling analysis).

In light of the foregoing, I need not decide here whether plaintiff's Title VII claim was timely filed with this Court, because the timeliness is not jurisdictional. Indeed, the Court has jurisdiction under Title VII, as codified at 42 U.S.C. § 2000e-2(a)(1), and under 28 U.S.C. § 1331. *See Arbaugh*, 546 U.S. at 500. Moreover, the case will be disposed of on other grounds, as discussed below.

**2.**

Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E. I. du Pont de Nemours & Co.*, 637 F.3d at 448.  As the Fourth Circuit has put it, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."  *McCray*, 741 F.3d at 483.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).  And, "[i]n response, the district court may defer consideration of the summary judgment motion, deny the motion, or 'issue any other appropriate order.'"  *McCray*, 741 F.3d at 483 (quoting Fed. R. Civ. P. 56(d)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'"  *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011), *aff'd.*, 707 F.3d 437 (4th Cir. 2013), *cert. granted*, — U.S. —, 134 S. Ct. 2898 (2014)).  Indeed, a non-moving party's Rule 56 request for additional discovery is properly denied "where the

additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Here, as discussed, after reviewing the Motion, the Court notified the parties that it intended to convert the Motion to one for summary judgment.  ECF 47.[5]  The Court also invited the parties to challenge that proposal and to "submit any additional evidence they believe the Court should consider in ruling on the Motion."  *Id.* at 2.  In response, plaintiff opposed the proposed conversion and submitted three additional declarations touching on her Title VII claims: one from plaintiff, supplementing her prior submission ("Dale Decl. Supp.", ECF 50-1); one from plaintiff's attorney, John Morris, Jr., supplementing a prior submission ("Morris Decl. Supp.", ECF 50-2); and one from Charles Brown, one of Dale's former co-workers ("Brown Decl.", ECF 55-1).

The Supplemental Declaration of John Morris, Jr. is a Rule 56(d) affidavit, submitted to "set forth the need" of plaintiff "for further discovery."  ECF 50-2, Morris Decl. Supp. ¶ 5. Morris's Declaration relies, in turn, on the "recollections of Mr. Brown," as stated in the Brown Declaration, ECF 55-1, discussed *infra*, to support the existence of certain "factual questions in need of further factual discovery."  *Id.* ¶ 14.[6]  Among other reasons, Morris asserts the need for discovery "to develop the following … areas of inquiry," *id.*:

> (1) the circumstances surrounding, and the prevailing motivations regarding, the respective plaintiffs' shifts in assignment and duties during

---

[5] Ultimately, conversion has occurred only as to the Title VII claims.

[6] Morris submitted identical declarations in this case and a related case with a different plaintiff but the same defendants.  *See McCleary-Evans v. Md. Transp. Auth.*, ELH-12-01550 (D. Md. May 23, 2012) (ECF 47-1).  Therefore, Morris refers to both Dale and McCleary-Evans in his statements.

the months prior to the identification of their positions for elimination; (2) the existence of a long-term desire among supervisory officials of Defendant to terminate Ms. Dale and Ms. McCleary-Evans for reasons unrelated to budgetary concerns[;] (3) official hesitation to proceed on any such identified desires to terminate these two women; (4) evidence connecting in any way (i) any prior motivation to terminate Ms. Dale and Ms. McCleary-Evans, (ii) the position transfers or reassignments that both women experienced months before the elimination of the positions they came to fill, (iii) the availability of the budget process to realize these such identified earlier desires to terminate the employment of the women, and (iv) such unlawful discriminatory or retaliatory motivations present in MTA officials related in any way to the budgetary decision-making and he [sic] earlier personnel decisions.

Morris also set forth his view that discovery is needed to uncover other "relevant information" of the kind "that no attorney could now describe or articulate that would be uncovered in the pursuit of the matters previously described leading to other evidence supporting" Dale's claims. *Id.*

In my view, the additional discovery pertaining to the "areas of inquiry" identified by plaintiff would not "affect the outcome of the suit under the governing law." *See Anderson*, 477 U.S. at 248. As discussed below, to the extent any new evidence would relate to the elimination of Dale's position as part of the FY09 Budget cuts, it would not be material because defendants are entitled to legislative immunity for actions taken in connection with the Budget cuts. *See*, *e.g.*, *McCray*, 741 F.3d at 486 (stating that, even "if McCray's supervisors advised the legislature to terminate her position because of discriminatory animus, this too would be protected by legislative immunity"). And, new evidence related to employment actions that occurred *before* any legislative activity would not be material, because Dale failed to exhaust her remedies as to those claims, and thus they are time-barred. *See*, *e.g.*, *Williams v. Giant Food, Inc.*, 370 F.3d

423, 428 (4th Cir. 2004) (affirming denial of Title VII claims where plaintiff failed to timely file them with EEOC).  Accordingly, I will deny plaintiff's request for additional discovery.

**3.**

As indicated, Dale's discrimination claims largely arise out of acts performed by defendants in the context of substantial, Statewide budget cuts implemented in Maryland in 2008.  Indeed, Dale contends that she was one among other "similarly situated African American women in job assignments deliberately calculated to expose the occupants to the jeopardy of budget cuts because of the person's race, gender, age, and disability."  Amended Complaint, ECF 31 at 2.  As noted, two other African American women who were over the age of forty when their positions were abolished as a result of the FY09 Budget cuts have also filed discrimination claims with this Court.  *See* page 2, *supra*.

This Court has already disposed of discrimination claims filed by McCray that were very similar to Dale's.  In *McCray I*, I held that legislative immunity barred all of McCray's Title VII claims.  2013 WL 210186, at *9-17.  Plaintiff appealed, and the Fourth Circuit affirmed in part and vacated in part.  *McCray*, 741 F.3d at 481.  Of import here, the Fourth Circuit agreed that "'enacting a budget is a legislative act.'"  *Id*. at 485 (citation omitted).  And, it also ruled that this Court's "conclusion" barring the Title VII claim on the basis of legislative immunity was "correct insofar as it shields the MTA and MDOT from lawsuit based on the counsel they gave executive officials in Maryland who carried out the budget cuts."  *Id*.

Nevertheless, the Fourth Circuit was of the view that McCray's "complaint [also] allege[d] discriminatory conduct that occurred before any legislative activity."  *Id*. at 481; *see also id*. at 485.  In the Fourth Circuit's view, dismissal as to those claims was premature under

Fed. R. Civ. P. 56(d), because McCray had not been afforded "the opportunity to discover evidence necessary to her claims … ." *Id.* at 481. Specifically, the Court pointed to McCray's allegations that "her supervisor at the MTA stripped her of responsibilities in the years leading up to budget cuts" and "refused to give McCray additional responsibilities, even after she asked for more work." *Id.* at 486. Therefore, the Court vacated and remanded for consideration of claims related to actions that occurred "well before any legislative activity." *Id.* at 484.

As in *McCray*, Dale alleges that defendants violated Title VII when they abolished her position as part of the FY09 Budget cuts. Amended Complaint, ECF 31 ¶¶ 19-21. But, the evidence shows that Dale's position was abolished as part of the exact same process applicable to Ms. McCray, and in the same manner. In both cases, defendants submitted the following relevant evidence: 1) an affidavit of Judith Slater, Director of Human Resources for MDOT, who described how MDOT identified positions for elimination as part of the FY09 Budget cuts, *see* ECF 7-4 ¶ 2 (McCray), ECF 10-4 ¶ 2 (Dale); 2) a memorandum from John D. Porcari, Secretary of MDOT, addressed to each respective plaintiff, notifying each, in identical language on the same date, that the position in issue would be abolished, *see* ECF 7-6 (McCray), ECF 10-6 (Dale); and 3) a list of "Proposed Position Eliminations" prepared by the MTA on October 8, 2008, and listing, in each case, the name of the respective plaintiff, *see* ECF 7-5 (McCray), ECF 10-5 (Dale). Plaintiff has never asserted that her position was abolished by some other decision-making process or is in some way distinguishable from *McCray*. *See* ECF 19 (opposition to SJ Motion); ECF 45 (Opposition to Motion).

Plaintiff attempts to generate a dispute of fact by way of the recently submitted Declaration of Charles Brown ("Brown Decl.", ECF 55-1).

Charles Brown[7] alleges two relevant basis of knowledge.  First, he states that he worked at the MTA, beginning in or about November 1989, and continuing until October 2008.  Brown Decl. ¶¶ 2, 5.  From his hiring in 1989 through at least 2007, he worked as an "Equal Employment Opportunity Officer III."  *Id.* ¶ 2.  Through his work with the MTA and through activities with the "Maryland Chapter of the Conference of Minority Transportation Officials and some community-uplift projects," Charles Brown came to know Dale personally.  *Id.*  He also came to "personally know" both Anthony Brown, an MTA official who completed an Affidavit filed by defendants, and "the position that [Anthony Brown] held" at the MTA.  *See* Brown Decl. ¶ 11; ECF 10-8 (Aff. of Anthony Brown).  Second, Charles Brown asserts that he is an expert in the field of human resources.  He briefly describes other positions he has held in the field of human resources before joining the MTA, and then states that his "background in human resources" qualifies him "to render comment as a person with expert knowledge upon the conduct of reductions in force such as the one attempted in this instance by the MTA."  Brown Decl. ¶ 7.

Based on Charles Brown's personal knowledge of Anthony Brown and Anthony Brown's position at the MTA, coupled with his own expertise in human resources, Charles Brown argues that certain statements made by Anthony Brown in an Affidavit filed by defendants appear to be "very irregular."  Brown Decl. ¶ 11.  Specifically, Charles Brown asserts that the "participation" of Anthony Brown, a high-level MTA administrator, "as the individual identifying specific positions [for elimination] was very irregular."  *Id.*  Charles Brown argues that such decisions are

---

[7] To avoid confusion between Charles Brown and Anthony Brown, I will use their first and last names.

usually made by more subordinate managers, because they have "immediate knowledge and responsibility to accomplish the employer's mission with diminished staff." *Id.* ¶ 9.

Defendants dispute Charles Browns's qualifications to speak as an expert. *See* ECF 58. Assuming, *arguendo*, that Charles Brown could qualify as an expert in human resources, there could be a genuine dispute about who actually identified Dale's position for elimination. However, the Court need not consider Charles Browns's qualifications, or whether his statements create a genuine dispute of fact, because, in any event, the fact of who actually identified Dale's position for elimination is not material.

Dale agrees (indeed, alleges) that her position was one of the many positions eliminated by the FY09 Budget cuts. Amended Complaint, ECF 31 ¶¶ 19-21. Under the circumstances of this case, it does not matter who identified Dale's position for elimination because where, as here, "an employee's job position is eliminated by operation of a budget cut, the employee may not evade legislative immunity by invoking discriminatory animus on the part of individuals who merely recommended elimination of the position." *McCray I*, 2013 WL 210186, at *13. In *McCray*, the Fourth Circuit said, 741 F.3d at 485: "[J]ust as a legislator is immune from discrimination lawsuits when she makes budget decisions based on improper animus, aides to that legislator are also immune. Legislative immunity is a shield that protects despicable motives as much as it protects pure ones. For this reason, the district court's conclusion is correct insofar as it shields the MTA and MDOT from lawsuit based on the counsel they gave executive officials in Maryland who carried out the budget cuts." Thus, defendants are immune from suit for the elimination of Dale's position, regardless of who first identified her position for elimination.

In sum, Dale's claim that defendants violated Title VII when they abolished her position, and defendants' arguments that their actions were protected by legislative immunity, hinge in relevant part on the same undisputed, material facts presented in *McCray I*. Accordingly, this case can come out no differently. Therefore, for the reasons described in *McCray I*, 2013 WL 210186, at *9-17, and as affirmed by the Fourth Circuit, *McCray*, 741 F.3d at 485, defendants are entitled to judgment as a matter of law that Dale's claim arising out of actions taken by defendants in connection with the FY09 Budget cuts (*i.e.*, her termination) is barred by legislative immunity.

**4.**

Under the Fourth Circuit's holding in *McCray*, 741 F.3d at 487, any discriminatory acts alleged to have occurred "before any legislative activity began" are not barred by legislative immunity. But, the Fourth Circuit did not address the way in which a complainant must pursue such a claim. Such a claim must have been timely filed with the EEOC. Because Dale failed to timely file such a claim with the EEOC, her Title VII claim as to conduct that preceded the budget cuts must fail.

Title VII "establishes two possible limitation periods for filing a charge of discrimination with the EEOC." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "'The basic limitations period is 180 days after the alleged unlawful employment practice [occurred]. However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" *Id.* (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998)) (alteration added). Thus, Title VII provides that an administrative charge must be filed with the EEOC, at the latest,

"three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

The Supreme Court has held that "filing a timely charge" with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but [is] a requirement … like a statute of limitations," *i.e.*, an affirmative defense. *See Zipes*, 455 U.S. at 393. Nonetheless, "timeliness requirements for an action alleging employment discrimination are to be strictly enforced." *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587, 597 (D. Md. 2000); *see Nat'l R.R. Passenger Corp. v. Morgan (Amtrak v. Morgan)*, 536 U.S. 101, 108-09 (2002).

In *Morgan*, 536 U.S. at 108-21, the Supreme Court clarified "[w]hat constitutes an 'unlawful employment practice' and when … that practice 'occurred.'" (Quoting 42 U.S.C. § 2000e-5(e)(1)). It noted that the Court has "repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts," *id*. at 111, and that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id*. at 114. It determined that a "discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110 (referencing Webster's Third New International Dictionary for definition of "occur"). Therefore, it concluded that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113.

The *Morgan* Court stated, 536 U.S. at 110: "A party … must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." Accordingly, the Court reversed the lower court's holding that "so long as one act falls within the charge filing

period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." *Id.* at 114.

In Dale's Amended Complaint, other than the abolition of her position in 2008, the most recent discriminatory act Dale alleges was her transfer into that position. ECF 31, Amended Complaint ¶ 10. But, Dale does not allege a clear date for the occurrence of this act. She states:

> 10. In 2007, with the arrival of a new administration following the election of Democratic Governor Martin O'Malley in November 2006, Plaintiff was notified that she would be fired from her position at the MTA, that position was to be abolished, and, pending separation, she was placed in a non-functioning office. Before she was separated from State service, Plaintiff's political friends intervened to have her placed in a new position — coordinator of a senior initiatives program.
>
> 11. Plaintiff held this position for less than 1 year when she was notified that the same budgetary crisis that had existed the prior year when the MTA had created her position now necessitated its abolition.

In Dale's Declaration submitted in opposition to defendants' SJ Motion, Dale indicated that this transfer occurred in "early 2008." She stated, ECF 19-1, Dale Decl.:

> 12. Sometime in 2007, … I was notified … that I would be fired from my position at the MTA, that position was to be abolished, and, pending separation, I was placed in a non-functioning office. I remained in this questionable status for several months until early 2008, when, before I was separated from State service, political friends intervened. As a result of their influence, MDOT Secretary, John D. Porcari and Weidfeld, placed me in a new position as coordinator of a senior initiatives program.

In the Supplemental Declaration that Dale submitted in response to this Court's notice of intent to convert the Motion, Dale restated these same facts. *See* ECF 50-1 ¶¶ 3, 4.

Dale filed her EEOC Charge on August 14, 2009. *See* ECF 34-4 at 1 (EEOC date stamp). In her EEOC Charge, Dale stated that she was "[r]eassigned to the position of Senior Initiatives Coordinator in summer 2008." *Id.* at 2. As discussed, under 42 U.S.C. § 2000e-5(e)(1), charges

must be filed with the EEOC, at the latest, "three hundred days after the alleged unlawful employment practice occurred."  *See also Morgan*, 536 U.S. at 110 ("A party … must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."). Therefore, complaints about any acts that occurred more than three hundred days before Dale filed her EEOC Charge—in this case, any acts that occurred before October 18, 2008—were not timely filed with the EEOC.

Even assuming that Dale was transferred to her position as coordinator of a senior initiatives program in "summer 2008," rather than "early 2008," and even assuming this was at the end of summer, the evidence shows that the transfer "occurred" prior to October 18, 2008. *E.g.*, ECF 34-4, EEOC Charge at 2.  Therefore, Dale did not timely file with the EEOC her claim that defendants violated Title VII by transferring her to the position of "coordinator of a senior initiatives program."  And, because she did not timely file this claim with the EEOC, this claim must fail.  Moreover, although Dale alleged other discriminatory acts in her Amended Complaint (and her EEOC Charge), since all these other alleged acts occurred before her transfer, they too were not timely filed.  Therefore, defendants are entitled to summary judgment as to this claim. *See Williams*, 370 F.3d at 428.

## C.

In her Amended Complaint, Dale added a count alleging that defendants violated the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2009), § 20-606(a)(1)(i) of the State Government Article ("S.G."), concerning "Unlawful employment practices."  ECF 31 at 2.

Under Fed. R. Civ. P. 15(c)(1), an "amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct … set out — or attempted to be set out — in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted…." Even assuming that, under Fed. R. Civ. P. 15(c)(1), Dale's amendment relates back to her original Complaint, Dale's State claims are barred by the applicable State statute of limitations.

The MFEPA "is the state law analogue of Title VII." *Alexander v. Marriott Int'l, Inc.*, RWT-09-02402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011); *see also Haas v. Lockheed Martin Corp.*, 396 Md. 469, 483 n.8, 914 A.2d 735, 743 n.8 (2007). Maryland courts interpreting MFEPA have often found federal cases arising under Title VII to be persuasive authority. *See, e.g., Taylor v. Giant of Md., LLC*, 423 Md. 628, 652, 33 A.3d 445, 459 (2011); *Molesworth v. Brandon*, 341 Md. 621, 632-33, 672 A.2d 608, 614 (1996); *Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 494, 578 A.2d 766, 772 (1990); *Edgewood Mgmt. Corp. v. Jackson*, 212 Md. App. 177, 200 n.8, 66 A.3d 1152, 1166 n.8 (2013). And, plaintiff has not asserted a distinction between her federal and Maryland discrimination claims. Accordingly, I will apply the same standards to my analysis of plaintiff's State and federal discrimination claims. *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

State statutes of limitations apply to State claims in federal courts. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). S.G. § 20-1013 provides that "a complainant may bring a civil action … alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge … ; (2) at least 180 days have elapsed since the filing … ; *and* (3)

the civil action is filed within 2 years after the alleged unlawful employment practice occurred."
(emphasis added).  As noted, the Supreme Court has held that, in the context of Title VII, "a
discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"  *Morgan*, 536
U.S. at 110.

Here, under both Maryland and federal law, the most recent allegedly unlawful
employment practice occurred "on or about October 15, 2008," when plaintiff was notified that
her position would be abolished.  *See* ECF 19-1, Dale Decl. ¶ 14; ECF 31, Amended Complaint
at 6 (showing most recent alleged unlawful employment practice is abolition of Dale's position
in 2008).  Dale's original Complaint was filed on January 17, 2013, ECF 1, and her Amended
Complaint was filed on March 25, 2014.  ECF 31.  Even if the allegations in the Amended
Complaint relate back to the original Complaint, the original Complaint was filed more than two
years after the occurrence of the most recent alleged unlawful employment practice.

In her Opposition, Dale argues that "the statute's two-year limitations provision has no
application" because her claims "are subject to the administrative requirement otherwise
applicable to Title VII … ."  ECF 45 at 2.  Although it is true that Dale's MFEPA claims are
subject to an administrative filing requirement, S.G. § 20-1013(a)(1), this requirement is in
addition to the requirement that any "civil action" be filed "within 2 years after the alleged
unlawful employment practice occurred."  S.G. § 20-1013(a)(3).  As quoted above, the statute
provides three requirements that a complainant must satisfy in order to pursue a civil action.

Under well settled principles of statutory construction, the use of the word "and" between
these three requirements unambiguously commands that a complainant meet all three

requirements, not just any one of them.  *Stanley v. State*, 390 Md. 175, 887 A.2d 1078 (2005),

provides guidance.

In *Stanley*, the Maryland Court of Appeals considered the import of the conjunctive

"and" in interpreting a statute and said, *id.* at 183-84, 887 A.2d at 1082-83:

> The definition of the illegal possession targeted for purposes of this statute …
> consists of two elements and is stated in the conjunctive.  … That means, since
> the definition includes a crime of violence *and* 'any violation classified as a
> felony in this State,' that a conviction of both, not just one, must be established.
> … Were it otherwise, we would not give the entire statute effect and, in fact, we
> would be rendering the conjunction, 'and,' superfluous.  Moreover, we would be
> adding a word, 'or,' to the statute that the General Assembly did not.  It is a well
> settled canon of statutory construction that we should, when interpreting a statute,
> give effect to all of the language and avoid a construction that renders any portion
> superfluous.

Similarly, Dale's proposed interpretation of S.G. § 20-1013(a) would render the

Maryland General Assembly's use of the term "and" superfluous, and would add the word "or"

where "the General Assembly did not," in violation of elementary principles of statutory

construction.  *See* 1A Singer & Singer, SUTHERLAND STATUTES & STATUTORY CONSTRUCTION §

21:14 (6th ed. 2002) ("Where two or more requirements are provided in a section and it is the

legislative intent that all of the requirements must be fulfilled to comply with the statute, the

conjunctive 'and' should be used."); *see also Bourgeois v. Live Nation Ent's, Inc.*, 430 Md. 14,

27, 59 A.3d 509, 516 (2013) ("We begin with the plain language of the statute, reading it as a

whole to ensure that no word, clause, sentence or phrase is rendered meaningless.").  Dale has

offered no reason for the Court to reject the statute's plain meaning.

Thus, it is clear on the face of the Amended Complaint, *see Goodman*, 494 F.3d at 464,

that Dale has failed to file her MFEPA claims within two years of the occurrence of the most

recent alleged unlawful employment practice.  *See* S.G. § 20-1013(a).  Accordingly, Dale's State

claims must be dismissed, as they are barred by the applicable statute of limitations.  *See Agbor v. Md. Aviation Admin.*, JKB-12-2690, 2013 WL 1413025, at *3, *2 (D. Md. Apr. 5, 2013) (dismissing state-law failure-to-promote claim as time-barred under S.G. § 20-1013(a)(3) because act occurred more than two years prior to filing of complaint, although claim was administratively exhausted).

### Conclusion

For the foregoing reasons, I will grant defendants' Motion (ECF 34).  A separate Order follows, consistent with the Memorandum Opinion.

Date: January 15, 2015                                      _____/s/_____
                                                                    Ellen Lipton Hollander
                                                                    United States District Judge